## SAMUEL TAYLOR v. COMMONWEALTH.

### Criminal Law—Homicide—Self-Defense—Instruction.

An instruction in a murder case where self-defense is relied upon is correct which in effect says to the jury that a man cannot hunt up his adversary and provoke a difficulty, and then shelter himself from punishment under an assault that he has provoked.

### APPEAL FROM MASON CRIMINAL COURT.

#### October 10, 1878.

OPINION BY JUDGE ELLIOTT:

In December, 1876, Dick Green, a man of color, was killed by the appellant, Samuel Taylor, at the house of a colored man named Alfred Lyons, a few miles below Maysville, Kentucky. The deceased is described by the evidence as almost a giant in physical development and strength, and as an overbearing tyrannical man in disposition.

On the day before he was killed, Green, at a grocery store in Maysville, inquired for the appellant and made threats that he would kill him, and coming up behind him in the rear room of the grocery· he drew his knife on him, and as the blow aimed at appellant was descending Green's arm was caught by a bystander and appellant hurried away by the bystanders to save his life. Green appeared almost wild with rage and declared that he would drink the blood of appellant and chaw his liver, etc.

The next evening after this meeting at the grocery Green and the appellant went to the house of Lyons. The house is one of three rooms, a kitchen and sitting-room, the latter a story and a half high, with a bedroom above. The sitting-room and kitchen are separated by a covered passage way about ten or eleven feet wide. On the arrival of Green and appellant at the house of Lyons, Green went into the kitchen and appellant into the sitting-room, but shortly thereafter Green came in where appellant was and proposed that they box, etc., which appellant refused; but Green began to box and wrestle with appellant, who begged him to desist and called out enough, etc., until finally Green struck him and they were ordered out of the house.

They then went out to the dirt road a short distance to the west of Lyons' house, when Green got appellant down and after beating him very severely he cried out enough, when Green let him up; and there is proof that even after this Green was seen with a rail in pur-

suit of appellant. Appellant, as soon as released from the grasp of his adversary, applied to one or two of the nearest neighbors for a gun or pistol but without success. When he returned to the house of Lyons he found Green still there. It is perhaps proper to state that before the parties left Lyons' house the first time Green had drawn his knife on appellant.

Shortly after appellant's return to the house of Lyons he said he must go home and started, whereupon Green placed himself in the door, knife in hand, and forbid his passage out. Appellant seized a gun, but was disarmed by young Lyons, and at Mrs. Lyons's solicitation Green put up his knife and retired from the door to the fireplace, and appellant passed out on to the porch or passage way and shortly thereafter was heard to say "Sam Taylor is a good man." Whereupon Green says, "What is that you say, Sam Taylor?" and Taylor responded, "Sam Taylor is a mighty good man," and Green immediately rushed toward him in the passage way. The next thing heard by the inmates of the house was the running of water, like a bucket of water had been overturned, and the next thing seen was Green, who came in and said, "He has cut me all to hell," and sunk down and died.

From the blood indications of the conflict the parties had met in the porch or passage way and Green was killed by an ax that had, when last seen before the homicide, been at the wood pile some ten feet from the nearest part of the passage way.

It is contended that the qualification made by the court of the third and fourth instructions were erroneously prejudicial to the prisoner. The third instruction authorized the defendant to kill the deceased, provided the jury believed that deceased had made previous attacks, and from his previous threats the appellant had reasonable grounds to believe that he was then about to receive great bodily harm at the hands of deceased; but at the close of this instruction the court added this qualification which is complained of: "Provided, however, that they believe from the evidence that the defendant was without fault himself in preparing for and seeking an attack from Green;" and a similar qualification was added to the fourth instruction, which was a similar instruction in defendant's favor.

After a careful consideration and scrutiny of the authority we are of the opinion that the qualifications made by the court to the third and fourth instructions of the defendant were proper.

In Wharton on Criminal Law, Sec. 990, it is laid down that

"where a man assaulted has retreated from the assailant, and is secure in his separation from further personal aggression, he has no right to return armed to the scene of conflict and voluntarily engage in a new conflict with the aggressor. If he does so and slays him he is guilty of murder or manslaughter according to the circumstances under which the homicide is committed. If, on receiving such a deadly assault, he suddenly leave the scene of the outrage, procure arms, and in the heat of blood consequent upon the wrong, return and renew the combat and slay his adversary, both being armed, such a homicide would be but manslaughter. For the law, from its sense of and tenderness toward human infirmity, would consider that sufficient time had not elapsed for the blood to cool and reason to resume its empire over the mind smarting under the original wrong.

The proviso to instructions three and four only deprived the defendant of relying on the plea of self-defense if he both prepared himself for and sought an assault from Green at the time Green was killed.

The law does not permit a man to prepare for his enemy and hunt him up and provoke an assault from him in order to kill him, and if the jury believed that after the accused had left the house unpursued by the deceased he deliberately prepared himself with the ax, which he procured from the wood pile, and returned to the passage and provoked an assault which resulted in the killing of deceased, they should not have acquitted him on the ground of self-defense, and they were only so told by the court.

The court only instructed the jury, in effect, that a man cannot hunt up his adversary and provoke a difficulty and then shelter himself from punishment under an assault that he has himself provoked.

We are of opinion that the instructions were as favorable to appellant as he had a right to ask, and the judgment is therefore *affirmed*.

*Wadsworth & Sons, for appellant. Moss, for appellee.*